UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:25-cv-25182-DPG

CONAN DOYLE ESTATE LIMITED,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.

_____/

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE
AND MEMORANDUM OF LAW ESTABLISHING THAT JOINDER IS PROPER**

    Plaintiff, Conan Doyle Estate Limited, by undersigned counsel, hereby responds to this Court's December 8, 2025, Order to Show Cause Regarding Joinder of Parties Prejudice [ECF No. 11], and in support thereof, respectfully refers this Court to the following Memorandum of Law:

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

    This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Sherlock Holmes Products"). As part of a coordinated effort to sell Counterfeit Sherlock Holmes Products, Defendants operate under Internet based e-commerce stores and fully interactive commercial Internet websites operating under the seller identification names set forth on Schedule "A" to the Complaint (the "Seller IDs"), Compl. [ECF No. 1] at ¶ 1,

and use these Seller IDs, as well as other unknown aliases, to conceal their identities and further their counterfeiting efforts, *id.* at ¶¶ 13 – 20. Defendants take advantage of this anonymity, as well as the mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's trademark rights and exploit U.S. consumers. *Id.*

Plaintiff faces a "swarm of attacks" on its trademark rights, and "filing individual causes of action against each counterfeiter ignores the form of harm" that Plaintiff faces. *Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 334 F.R.D. 511, 517 (N.D. Ill. 2020). Joinder is proper because Fed. R. Civ. P. 20's inclusion of the term "occurrence" allows a plaintiff to join in a single case the defendants who commonly participate in such unlawful occurrences. *Id.; see also Chrome Cherry Limited v. Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 21-cv-05491, 2021 WL 6752296, at *1 ("the Court finds that although Plaintiff has not sufficiently demonstrated that the asserted claims arise out of the same transaction or series of transactions, Plaintiff has sufficiently demonstrated that they arise out of the same occurrence or series of occurrences. Therefore, joinder of the 'Schedule A' Defendants is proper at this preliminary stage. Fed. R. Civ. P. 20(a)(2)(A). The Court additionally notes that no Defendants are prejudiced by permitting joinder at this juncture."); *see also Oakley, Inc. v. The Partnerships, et al.*, No. 1:20-cv-05972 (N.D. Ill. Nov. 9, 2020) (unpublished) (ECF No. 27) (same); *Loewe S.A., Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 1:20-cv-07185 (N.D. Ill. Dec. 18, 2020) (ECF No. 26) (same).[1]

---

[1] Recently, the Fifth Circuit Court of Appeals has also found properly alleged joinder in similar cases involving "Schedule A" defendants. *See Viahart, L.L.C. v. GangPeng*, 2022 WL 445161, at *4 (5th Cir. Feb. 14, 2022) ("no basis to find misjoinder" based on allegations that "the defendants all worked together as an 'interrelated group' to knowingly sell counterfeit products" and that the

The well-pled allegations in Plaintiff's Complaint establish that Defendants are working in a similar manner to sell Counterfeit Sherlock Holmes Products, as part of the same "occurrence" of mass harm, *i.e.*, the swarm of all Defendants attacking Plaintiff's federally registered trademarks at once. *Bose Corp.*, 334 F.R.D. at 516. As demonstrated throughout this memorandum, the majority of district courts agree that this establishes a logical relationship supporting joinder. Joinder at this stage is consistent with ***hundreds*** of factually similar cases and comports with the strongly encouraged policy of "entertaining the broadest possible scope of action consistent with fairness to the parties." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).[2]

Further, cases like the matter at hand have proven effective at substantially reducing online counterfeiting and infringement and preventing consumer confusion. The gravity of these cases was recently addressed by Executive Order 13904, a copy of which is attached hereto as **Exhibit 1**. "It is the policy of the United States Government to protect consumers, intellectual property rights holders, businesses, and workers from counterfeit goods … and other contraband now being introduced into the United States as a result of the recent growth in e-commerce." *See* Executive Order 13904 of January 31, 2020.  It is also "***the policy of the United States Government to ensure***

---

plaintiff "did not know the full identities of the defendants because they operated to conceal their identities and the network in which they operated").

[2]  Indeed, in the past several years, similar cases have been filed and permitted to proceed by thirteen (13) district court judges in this district.  Similar cases against multiple e-commerce store seller aliases have been filed across the country for nearly a decade. *See, e.g. Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.,* No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.,* No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010); *Volvo Car Corporation, et al. v. The Unincorporated Associations Identified in Schedule A*, No. 18-cv-00977 (E.D. Va. Feb. 6, 2019); *CCA and B, LLC v. Douyong toy, et al*., No. 19-cv-01851 (N.D. Ga. Apr. 25, 2019); *Talavera Hair Products, Inc. v. Taizhou Yunsung Elec. Appliance Co., Ltd., et al*., No. 18-cv-00823 (S.D. Ca. Apr. 30, 2018), including hundreds of cases in the Southern District of New York and the Northern District of Illinois.

*that parcels containing contraband be kept outside of the United States to the greatest extent possible and that all parties who participate in the introduction or attempted introduction of such parcels into the United States be held accountable under the laws of the United States*." *Id.* (emphasis added).

The Department of Homeland Security ("DHS") has further weighed in on the systematic counterfeit activities that are now rampant throughout online platforms. *See* January 24, 2020, report titled *Combating Trafficking in Counterfeit and Pirated Goods prepared by the U.S. Department of Homeland Security, Office of Strategy, Policy & Plans* ("Homeland Security Report"), a copy of which is attached hereto as **Exhibit 2**.

Specifically, the DHS reported that "American consumers shopping on e-commerce platforms and online third-party marketplaces now face a significant risk of purchasing counterfeit or pirated goods." Homeland Security Report at p. 7. The Acting Secretary stated as follows:

> The rapid growth of e-commerce has revolutionized the way goods are bought and sold, allowing for counterfeit and pirated goods to flood our borders and penetrate our communities and homes. Illicit goods trafficked to American consumers by e-commerce platforms and online third-party marketplaces threaten public health and safety, as well as national security. This illicit activity impacts American innovation and erodes the competitiveness of U.S. manufacturers and workers. *Id.* at p. 3.

In addition to the DHS, the Organisation for Economic Cooperation and Development ("OECD") reports that "E-commerce platforms represent ideal storefronts for counterfeits and provide powerful platform[s] for counterfeiters and pirates to engage large numbers of potential consumers." *See* OECD (2018), *Governance Frameworks to Counter Illicit Trade*, Illicit Trade, OECD Publishing, Paris, https://doi.org/10.1787/9789264291652-en. The OECD also reports that "international trade in counterfeit and pirated goods amounted to as much as $509 billion in 2016. This represents a 3.3 percent increase from 2013 as a proportion of world trade." Homeland Security Report at p. 8. This dramatic increase has been made possible because online

4

marketplaces can quickly and easily establish authentic looking "store-fronts" to compete with legitimate businesses.

The DHS has also commented on the ease through which these counterfeiters can conceal their identities and relationships between various storefronts:

> ***Platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, nor to link one seller profile to other profiles owned by that same business, or by related businesses and owners***. In addition, the party that appears as the seller on the invoice and the business or profile that appears on the platform to be the seller, may not always be the same.
>
> ***<u>This lack of transparency allows one business to have many different profiles that can appear unrelated</u>***. It also allows a business to create and dissolve profiles with greater ease, which can obfuscate the main mechanism that consumers use to judge seller credibility, namely reviews by other buyers. *Id.* at p. 39 (emphasis added).

The foregoing policies not only demonstrate the importance of using cases like the matter at hand to assist in combatting these online counterfeiting networks, but more importantly (for purposes of this Response), demonstrate the extraordinary difficulties trademark owners face when attempting to identify the relationship between various storefronts engaging in the same counterfeiting or infringing conduct.

## II. ARGUMENT

### A. Standard for Permissive Joinder Under Fed. R. Civ. P. 20(a)

The Supreme Court has stated that under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) (quoting *Gibbs*, 383 U.S. at 724). Above all, "***[j]oinder of parties is generally encouraged in the interests of judicial economy***, subject to fulfillment of two prerequisites: (1) the persons who are joined as plaintiffs must be interested in claims that arise

out of the same transaction or occurrence, or series of transactions or occurrences; and (2) all the parties joined must share in common at least one question of law or fact." *Gittens v. School Bd. Of Lee County.,* Case No: 2:16–cv–412–FtM–99MRM, 2018 WL 839242, at *1 (M.D. Fla. Feb. 13, 2018) (citing *Alexander v. Fulton County,* 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled other grounds, Manders v. Lee,* 338 F.3d 1304 (11th Cir. 2003)) (emphasis added).

As to the first prong of Fed. R. Civ. P. 20(a)(2), courts have applied this "transaction or occurrence" requirement using a "case-by-case approach" based on a "flexib[le] . . . standard [that] enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20." *See In re EMC Corp.*, 677 F.3d at 1358 (citing 7 Charles Alan Wright et al., Federal Practice and Procedure § 1653 (3d ed. 2001)). In analyzing whether parties are properly joined under Rule 20, "the term 'transaction' is a world of flexible meaning that 'may comprehend a series of many occurrences, depending not as much upon their immediateness of their connection as upon their logical connection.'" *El Fakih v. Nissan North America, Inc.*, Case No. 18-cv-60638-BLOOM/Valle, 2018 WL 4193675, at *3 (S.D. Fla. July 26, 2018) (quoting *Gonzalez v. Batsmasian*, 320 F.R.D 580, 581 (S.D. Fla. 2017); *Alexander*, 207 F.3d at 1323).

Fed. R. Civ. P. 20 similarly does not define "occurrence" and courts have not considered the meaning of "occurrence" apart from the meaning of "transaction." *Bose Corp.*, 334 F.R.D. at 516. However, "canons of construction ordinarily suggest that terms connected by a disjunctive . . . be given separate meanings," and the dictionary definitions suggest that "occurrence" is much broader than "transaction." *Id.* An "occurrence" is defined as something that simply happens or appears, and is not necessarily the product of joint or coordinated action. *Id. See also Oakley, Inc.*, Case No. 1:20-cv-05972 (unpublished) (ECF No. 27) ("Plaintiff has sufficiently demonstrated that

6

[the asserted claims] arise out of the same occurrence or series of occurrences"); *Loewe S.A.*, 1:20-cv-07185 (ECF No. 26) (same).

Moreover, "to satisfy the commonality prong for proper joinder, all that is required is that the plaintiffs share a single common question of law or fact." *El Fakih*, 2018 WL 4193675, at *3 (citing *Alexander*, 207 F.3d at 1324; *Beckford v. Dep't of Corrs.*, Case No. 06–14324–CIV 2008 WL 8192939, at *2 (S.D. Fla. Apr. 29, 2008) (holding the commonality prong satisfied when the plaintiffs brought their claims under the same statute).

B. **Plaintiff's Well-Pled Allegations Establish the First Prong of Federal Rule 20.**

"When assessing whether the requirements of Rule 20(a)(2) are satisfied, the factual allegations in the plaintiff's complaint are accepted as true." *Malibu Media LLC v. Does 1-28*, 295 F.R.D. 527, 531 (M.D. Fla. 2012) (citing *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009)). "Rule 20 must be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." *Id.* (citing Fed. R. Civ. P. 1).

Here, Plaintiff's well-pleaded allegations establish that the Defendant Seller ID's are all operating in the same transaction, occurrence, or series of transactions or occurrences and, therefore, joinder is proper. Specifically, the Complaint alleges that this action was initiated "in order to combat the ***indivisible harm*** caused by the ***combined actions of Defendants*** and others engaging in ***similar conduct***." Compl. at ¶ 3 (emphasis added). The Complaint further alleges that the Defendant Seller ID's, all of whom are of "unknown makeup" and residing in foreign jurisdictions in their efforts to conceal their identities, redistribute products from "the same or similar sources" and ship those products to fulfillment centers in the U.S. *Id.* at ¶ 13. All of these Defendants have registered their Seller ID's with similar online platforms for the purpose of engaging in counterfeiting activities. *Id.* at ¶¶ 16 and 17. The Complaint further alleges that the

7

Defendant Seller ID's use payment and financial accounts associated with the online storefronts "to accept, receive, and deposit profits from Defendants' trademark and counterfeiting and infringing and unfairly competing activities …", *id.* at ¶ 37, and further, that these ill-derived assets are easily transferred or concealed to avoid a favorable monetary award to Plaintiff, *id*. at ¶ 38.

The foregoing allegations are not limited to common facts relating to the similarity of the marks at issue and evidence supporting Plaintiff's claims (which are more applicable to the second prong of the Rule 20 inquiry), but more importantly, demonstrate that these groupings of Defendants are all engaging in the same systematic approach of establishing an esoteric online storefront to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendant can easily conceal to avoid any real liability for their actions. In sum, Plaintiff's specific factual allegations that Defendants are working in a similar manner to sell Counterfeit Sherlock Holmes Products collectively in the same "occurrence of mass harm" show a logical relationship supporting joinder. *Bose Corp*., 334 F.R.D. at 516.

Further, even if Defendants are not directly coordinating, Plaintiff's allegations establish that Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] trademarks with impunity." *Id.* "[I]t is plausible that Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they do not engage in direct communication or coordination." *Id.* Defendants are alleged to be infringers, and "want to blend in to cause consumer confusion." *Id.* at 514. It is not possible to link all or clusters of internet stores together using arbitrary commonalities. Homeland Security Report at p. 39.

Also of critical importance is that evidence obtained frequently demonstrates that many of the seller IDs identified as Defendants in the initial pleading are often operated by ***the same person***

8

*or persons*, even across different online platforms. *See, e.g.*, **Exhibit 3** (showing exemplary commonalities between different listings). Plaintiffs are not required to show and provide evidence that each of the Defendant Seller ID's is commonly owned at the pleading stage.[3] At the early stage of the proceedings, the Fifth Circuit Court of Appeals found it sufficient to allege that the Defendants are an interrelated group that are concealing their identities. *See Viahart, L.L.C.*, 2022 WL 445161, at *4. Pursuing linking efforts is highly burdensome if not impossible without first receiving seller data from the online platforms through which Defendants attempt to conceal their activities and furthering those efforts through direct discovery to those Defendants. The foregoing efforts, however, are not required by Fed. R. Civ. P. 20 to join multiple Defendant Seller ID's at the pleading stage, especially without adversarial presentation and the opportunity to conduct meaningful discovery from a Defendant opposing joinder.

    **C.**    **Plaintiff's Well-Pled Allegations Also Establish the Second Prong of Federal Rule 20.**

Plaintiff's well-pleaded allegations also satisfy Fed. R. Civ. P. 20(a)(1)(B), which provides that joinder is proper if "any question of law or fact common to all defendants will arise in the action." In this case, Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Sherlock Holmes Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Sherlock Holmes

---

[3] Plaintiff has endeavored to more specifically identify these Defendants through Schedule A to the Complaint, rather than permissibly proceeding with identifying each as a fictious Doe. "As a general matter, fictitious-party pleading is not permitted in federal court. [The 11th Circuit] has created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Here, it would be permissible for Plaintiff's initial pleading to simply identify each defendant as a Doe, but Plaintiff has gone even further and identified these sellers with sufficient specificity that the online platforms can act upon any preliminary or final relief ordered by this Court. By either route, the initial pleading should not be dismissed under Rule 20.

Products into the United States and Florida over the Internet. Compl. at ¶¶ 1, 13 – 18, and 28 – 38. In addition, the methods Plaintiff uses to investigate, uncover, and collect evidence about any infringing activity will be the same for each Defendant. Each Defendant may later present different factual evidence to support individual legal defenses, but "[p]rospective factual distinctions, however, will not defeat the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B) at this stage in the litigation." *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 252 (N.D. Ill. 2011).

### D. The Authority Cited in This Court's Order is Distinguishable and Contrary to the Overwhelming Majority View Even by Those Courts.

Through its December 8, 2025, Order, this Court cites to Judge K. Michael Moore's opinion in *Omega, SA v. Individuals, Business Entities, and Unincorporated Ass'ns Identified on Schedule A*, Case No. 0:22-cv-60026-KMM, 2023 WL 2248233 (S.D. Fla. Jan. 14, 2023).

In *Omega, S.A.*, the Court relied heavily on the district court's decision in *Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 184 (N.D. Ill. 2020), to support the position that "joinder of numerous defendants in one action undermines judicial economy where the court must still evaluate the evidence submitted against *each* Defendant in support of liability and damages." *Id.* at *3 (emphasis in original). The narrow approach in *Estee Lauder*, however, does not permit joinder of any defendants. Rather, it requires that a plaintiff show that multiple e- commerce store seller aliases are operated by the same individual or entity, *i.e.*, a single defendant. The information required to meet such a stringent requirement is typically not available prior to court ordered discovery, and even if it was, could easily be circumvented by defendants using false or different information.

Further, *Estee Lauder* relies on distinguishable authority, wherein the defendants were known corporations or entities. See *Slep-Tone Entm't Corp. v. Roberto*, 2013 WL 5748896, at *2-

10

3 (N.D. Ill. Oct. 22, 2013) (defendants were identifiable, distinct individuals and restaurants providing karaoke entertainment); *ThermaPure, Inc. v. Temp-Air, Inc.,* 2010 WL 5419090, at *4 (N.D. Ill. Dec. 22, 2010) (severing case with defendants that were identifiable corporations and entities); *Spread Spectrum Screening, LLC v. Eastman Kodak Co.,* 2010 WL 3516106, at *2 (N.D. Ill. Sept. 1, 2010) (same); *SB Designs v. Reebok Int'l, Ltd.,* 305 F. Supp. 2d 888, 892 (N.D. Ill. 2004) (same).

Unlike the matter at hand, the authority cited by *Estee Lauder* simply does not involve defendants, the specific identity of which, are incapable of being known at the preliminary stages of the proceeding, while simultaneously working in a similar manner as part of the same "occurrence" of mass harm to the plaintiff. Indeed, subsequent decisions from the Northern District of Illinois involving the same circumstances as the matter at hand have considered the court's decision in *Estee Lauder* and still found joinder was appropriate. *See Pink Floyd (1987) Limited v. Partnerships and Unincorporated Associations Identified on Schedule "A"*, Case No. 21-cv-04406, 2021 WL 7179622, at *1 (N.D. Ill. Oct. 21, 2021) (noting the court's prior decision in *Estee Lauder* and nevertheless holding that "Plaintiff has sufficiently demonstrated that [Plaintiff's allegations] arise out of the same occurrence or series of occurrences … at this preliminary stage.") *Chrome Cherry Limited*, 2021 WL 6752296, at *1 (same); *see also Viahart, L.L.C.*, 2022 WL 445161, at *4 ("no basis to find misjoinder" based on allegations that "the defendants all worked together as an 'interrelated group' to knowingly sell counterfeit products" and the plaintiff "did not know the full identities of the defendants because they operated to conceal their identities and the network in which they operated").

Further, in *Omega, SA*, the Court noted that Plaintiff asserted "over forty different trademarks" against the defendants identified in the pleading's respective Schedule A without a

sufficient statement as to which defendant infringed which mark. *Omega, SA*, 2023 WL 2248233, at *2. Here, in contrast, Plaintiff is only one mark, *i.e.,* the "SHERLOCK HOLMES" word mark. Plaintiff has also submitted evidence files for each Defendant plainly showing each Defendants illicit use of the SHERLOCK HOLMES trademarks. [ECF No. 7-3].

E.   **Joinder is Consistent with Fairness, Convenience, and Judicial Economy.**

Joinder at this stage also serves the important interests of convenience and judicial economy, leading to a just, speedy, and inexpensive resolution for Plaintiff, Defendants, and this Court. Joinder does not create any unnecessary delay nor does it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike. Plaintiff anticipates that these foreign Defendants will be individually subject to default, and there is no prejudice to any defaulting defendant, whose liability may be established upon default irrespective of the presence of any other defendant. *See Pink Floyd (1987) Limited,* 2021 WL 7179622, at *1 ("The Court additionally notes that no Defendants are prejudiced by permitting joinder at this juncture."); *Chrome Cherry Limited,* 2021 WL 6752296, at *1 (same).

The resources of the Court, other judges in this District, and other Districts will be substantially taxed if Plaintiff's claims against Defendants are severed into one lawsuit per infringing seller. "Requiring the filing of separate complaints could flood the courts with thousands of additional single defendant Lanham Act cases, with no difference in resolution of nearly every case in a practical sense. The only thing that will inevitably occur is the slowdown of adjudications of other lawsuits, or the decrease of filings of cases which on their face have alleged plausible violations of the Lanham Act." *Bose Corp.*, 334 F.R.D. at 517, n.6.

Importantly, such impediments would also reduce the ability of Plaintiff and other brand owners to effectively protect their intellectual property rights and consumers in a cost-effective

12

manner. This is especially true in the context of online counterfeiting. Indeed, due to the overwhelming number of sellers engaging in the counterfeiting conduct identified by Plaintiff's Complaint, requiring Plaintiff to file a separate suit with a separate filing fee with separate costs associated with each case is simply impossible. By requiring Plaintiff to undertake such a monumental task, Plaintiff will be effectively left without any realistic procedural vehicle to enforce its intellectual property rights.

Cases like the present case are one of the few effective mechanisms for stopping and deterring online counterfeiting. In sum, Plaintiff's well-pleaded allegations establish that the named Defendant Seller ID's are participating in the same unlawful occurrence or series of occurrences and that joinder is proper. Plaintiff (as well as other brand owners) would be severely prejudiced if it were required to file separate lawsuits simply because Defendants registered a particular e-commerce store using a different Defendant Internet Store. *Shambour v. Carver County*, Civ. No. 14–566 (RHK/LIB), 2014 WL 3908334, at *6 (D. Minn. Aug. 11, 2014) ("In the matter at hand, joinder is proper because the alleged acts similarly support a larger allegation of a systemic problem and the Court is persuaded that keeping Shambour's claims together is not only permissible but preferable.").

### III. CONCLUSION

For the reasons set forth above, joinder of Defendants is proper. This approach is consistent with other courts and comports with the strongly encouraged policy of entertaining the broadest possible scope of action consistent with fairness to the parties. Alternatively, Plaintiff respectfully requests leave to amend its pleading.

Date:   December 15, 2025					Respectfully submitted by,

**Richard Guerra**
Richard Guerra (Fla. Bar No. 689521)
Attorney Email address: rguerra@brickellip.com
THE BRICKELL IP GROUP, PLLC
1101 Brickell Avenue, South Tower, Suite 800
Miami FL, 33131
Telephone: (305) 728-8831
*Attorneys for Plaintiff*