UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-cv-25182-DPG

CONAN DOYLE ESTATE LIMITED,

     Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

     Defendants.

_____/

## AMENDED COMPLAINT[1]

     Plaintiff, Conan Doyle Estate Limited ("CDEL"), by and through undersigned counsel, hereby sues Defendants, The Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively, the "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

     1.    Defendants are promoting, selling, reproducing, offering for sale, and distributing goods using counterfeits and confusingly similar imitations of Plaintiff's trademarks within this district through various Internet based e-commerce stores and fully interactive commercial Internet websites operating under the seller identification names set forth on Schedule "A" hereto (the "Seller IDs"). [2]

---

[1] Paragraph 13 of Plaintiff's pleading has been amended to specify that all Defendants identified on Schedule "A" are residing in and/or operating from China, and that all Defendants identified on Schedule "A" operate storefronts on the Amazon marketplace.

[2] Plaintiff will be moving to file Schedule "A" under seal.

2.    Like many other famous trademark owners, Plaintiff suffers ongoing daily and sustained violations of their trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's trademarks, as well as the destruction of the legitimate market sector in which they operate.

3.    In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, Plaintiff has expended significant amounts of resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, particularly through online marketplace platforms, has created an environment that requires individuals, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and themselves from the negative effects of confusion and the erosion of the goodwill connected to Plaintiff's brand.

## JURISDICTION AND VENUE

4.    This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement, false designation of origin under the Lanham Act, common law unfair competition; common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d), and The All Writs Act, 28 U.S.C. § 1651(a); 15 U.S.C. § 1051 *et seq.*

5.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1114 and 1125(a), 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

6.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, because the claims are so related to the trademark claims in this action, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Defendants are subject to personal jurisdiction in this District because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this District through at least the Internet based e-commerce stores and fully interactive commercial Internet websites accessible in Florida and operating under the Seller IDs.   Upon information and belief, Defendants infringe Plaintiff's trademarks in this District by advertising, using, selling, promoting and distributing counterfeit trademark goods through such Internet based e-commerce stores and fully interactive commercial Internet websites.

8.      Venue is proper in this District pursuant 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this District by advertising, offering to sell, selling and/or shipping infringing products into this District.   Defendants may be found in this District, as they are subject to personal jurisdiction herein.

**THE PLAINTIFF**

9.      Plaintiff is a United Kingdom corporation having its principal place of business in Southampton, United Kingdom.

10.     CDEL is the owner of the SHERLOCK HOLMES standard character marks and related logos and marks (collectively, the "Sherlock Holmes Marks"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office.

3

11.     Sherlock Holmes, the brilliant fictional detective, was created by Sir Arthur Conan Doyle, a Scottish writer. Doyle drew inspiration from his medical studies, particularly his professor Dr. Joseph Bell, whose exceptional deductive reasoning skills mirrored those of Holmes. Doyle's early career as a doctor also influenced the character, as did his interest in crime and detective work. The first Sherlock Holmes story, "A Study in Scarlet," was published in 1887, introducing Holmes and his companion Dr. Watson to the world. Today, Sherlock Holmes is widely regarded as the world's most popular fictional detective due to his enduring appeal, fascinating character traits, and the enduring popularity of his stories. He has been portrayed in more film and television adaptations than any other literary human character, solidifying his place in popular culture.

12.     High-quality products under CDEL's registered and unregistered trademarks are designed, manufactured, marketed, and distributed in interstate commerce, including within this judicial district.

## THE DEFENDANTS

13.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in China, or redistribute products from the same or similar sources in China and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from China.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants target their business activities towards consumers throughout the United States, including within this district through the operation of Internet based e-commerce stores via the Amazon marketplace under the Seller IDs.

14.     Defendants are the past and present controlling forces behind the sale of products under counterfeits and infringements of Plaintiff's trademarks as described herein using at least the Seller IDs.

15.     Upon information and belief, Defendants directly engage in unfair competition by advertising, offering for sale, and selling goods bearing one or more of Plaintiff's trademarks to consumers within the United States and this District through Internet based e-commerce stores using, at least, the Seller IDs and additional seller identification aliases and domain names not yet known to Plaintiff.  Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

16.     Defendants have registered, established or purchased, and maintained their Seller IDs.  Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs.

17.     Upon information and belief, some Defendants have registered and/or maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

18.     Upon information and belief, Defendants will continue to register or acquire new seller identification aliases and domain names for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations of one or more of Plaintiff's trademarks unless preliminarily and permanently enjoined.

19.     Defendants use their Internet-based businesses in order to infringe the intellectual property rights of Plaintiff.

20.     Defendants' business names, *i.e.*, the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of counterfeit and

infringing goods bearing one or more of Plaintiff's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.  Moreover, Defendants are using Plaintiff's famous trademarks to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

<strong>GENERAL FACTUAL ALLEGATIONS</strong>

<strong><em>Plaintiff's Intellectual Property Rights</em></strong>

21.     Plaintiff is the owner of the trademark registrations identified on **Exhibit 1** attached hereto, which are valid and registered on the Principal Register of the United States Patent and Trademark Office, and pending applications for trademark registration on the Principal Register (*i.e.*, the Sherlock Holmes Marks):

22.     The Sherlock Holmes Marks are used in connection with the design, manufacturing, marketing, and distribution of high-quality goods in at least the categories identified above.

23.     Long before Defendants began their infringing activities complained of herein, the Sherlock Holmes Marks had been used by Plaintiff in interstate commerce to identify and distinguish Plaintiff's products and merchandise for an extended period.

24.     The Sherlock Holmes Marks are well-known and famous and have been for many years.  Plaintiff has expended substantial time, money, and other resources developing, enforced, and otherwise promoting the Sherlock Holmes Marks and products bearing the Sherlock Holmes Marks.  The Sherlock Holmes Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

25.     Plaintiff has extensively used, enforced, and promoted the Sherlock Holmes Marks in the United States in association with their merchandise.

26.     As a result of Plaintiff's efforts, members of the consuming public readily identify products and merchandise bearing or sold under the Sherlock Holmes Marks as being high quality goods sponsored and approved by Plaintiff.

27.     The Sherlock Holmes Marks serve as a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

### Defendants' Counterfeiting and Infringing Conduct

28.     Upon information and belief, Defendants are promoting and advertising, distributing, selling, and/or offering for sale counterfeit and infringing goods in interstate commerce using exact copies and confusingly similar copies of the Sherlock Holmes Marks through at least the Internet based e-commerce stores operating under the Seller IDs (collectively, the "Counterfeit Goods").  Plaintiff has used the Sherlock Holmes Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

29.     Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially and materially different than that of Plaintiff's genuine goods.  Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff under the Sherlock Holmes Marks despite Defendants' knowledge that they are without authority to use the Sherlock Holmes Marks.  The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will

believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff.

30.    Defendants advertise their Counterfeit Goods for sale to the consuming public via e-commerce stores on Internet marketplace websites using at least the Seller IDs.  In so advertising these goods, Defendants improperly and unlawfully use the Sherlock Holmes Marks without Plaintiff's permission.

31.    As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the Sherlock Holmes Marks. Specifically, Defendants are using counterfeits and infringements of Plaintiff's famous Sherlock Holmes Marks in order to make their e-commerce stores and websites selling illegal goods appear more relevant, authentic, and attractive to consumers searching for Plaintiff's related goods and information online.  By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.   Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the goodwill associated with the Sherlock Holmes Marks, and/or (iii) increasing Plaintiff's overall cost to market the Sherlock Holmes Marks and educate consumers about their brand via the Internet.

32.    Upon information and belief, Defendants are concurrently targeting their counterfeiting and infringing activities toward consumers and causing harm within this District

and elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

33.     Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Sherlock Holmes Marks, including their exclusive right to use and license such intellectual property and the goodwill associated therewith.

34.     Defendants' use of the Sherlock Holmes Marks, including the promotion and advertisement, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

35.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

36.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

37.     Upon information and belief, Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Seller IDs and any other alias seller identification names being used and/or controlled by them.

38.     Further, upon information and belief, Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Plaintiff.

39.     Plaintiff has no adequate remedy at law.

40.     Plaintiff is suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Sherlock Holmes Marks.

41.     The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I -- TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

42.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 41 as though fully set forth herein.

43.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Sherlock Holmes Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

44.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods, using counterfeits and/or infringements of the Sherlock Holmes Marks. Defendants are continuously infringing and inducing others to infringe the Sherlock Holmes Marks by using one or more of them to advertise, promote, offer to sell, and/or sell at least counterfeit and infringing goods.

45.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

46.    Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable damage to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

47.    Defendants' above-described illegal actions constitute counterfeiting and infringement of the Sherlock Holmes Marks  in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

48.    Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined.  Additionally, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT II -- FALSE DESIGNATION OF ORIGIN**
**PURSUANT TO § 43(A) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

49.    Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 41 as though fully set forth herein.

50.    Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of the Sherlock Holmes Marks  have been widely advertised and offered for sale throughout the United States via the Internet.

51.    Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of the Sherlock Holmes Marks  are virtually identical in appearance to Plaintiff's genuine goods. However, Defendants' Counterfeit Goods are different in quality.  Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

52.    Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which

tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

53.     Defendants have authorized infringing uses of the Sherlock Holmes Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

54.     Additionally, Defendants are using counterfeits and infringements of the Sherlock Holmes Marks in order to unfairly compete with Plaintiff and others for space within search engine organic results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the World Wide Web.

55.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

56.     Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III -- COMMON LAW UNFAIR COMPETITION

57.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 41 as though fully set forth herein.

58.     This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods using marks which are virtually identical, both

visually and phonetically, to the Sherlock Holmes Marks in violation of Florida's common law of unfair competition.

59.    Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing counterfeits and infringements of the Sherlock Holmes Marks.  Defendants are also using counterfeits and infringements of the Sherlock Holmes Marks to unfairly compete with Plaintiff for (i) space in search engine results across an array of search terms and/or (ii) visibility on the World Wide Web.

60.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Sherlock Holmes Marks.

61.    Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

62.    Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 41 as though fully set forth herein.

63.    This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing the Sherlock Holmes Marks.  Plaintiff is the owner of all common law rights in and to the Sherlock Holmes Marks.

64.    Specifically, Defendants, upon information and belief, are promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the Sherlock Holmes Marks.

65.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the Sherlock Holmes Marks.

66.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Sherlock Holmes Marks; from using the Sherlock Holmes Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any counterfeit, copy, or colorable imitation of the Sherlock Holmes Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing,

14

applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff's, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's Sherlock Holmes Marks; and from otherwise unfairly competing with Plaintiff.

B.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to the Seller IDs, and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Sherlock Holmes Marks.

C.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective Seller ID.

D.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court permanently remove any and all listings and associated images of goods bearing counterfeits and/or infringements of the Sherlock Holmes Marks via the e-commerce stores operating under

the Seller IDs, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of the Sherlock Holmes Marks associated with and/or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Sherlock Holmes Marks.

E.   Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two hundred thousand US dollars ($200,000.00) per each counterfeit trademark used and product type sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

F.   Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other alias seller identification or e-commerce store names, domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

G.   Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

H.   Entry of an order requiring Defendants to pay prejudgment interest according to law.

I.   Entry of an order for such other and further relief as the Court may deem proper and just.

Date:   January 20, 2026              Respectfully submitted by,

**Richard Guerra**
Richard Guerra (Fla. Bar No. 689521)
Email: rguerra@brickellip.com
THE BRICKELL IP GROUP, PLLC
1101 Brickell Avenue, South Tower, Suite 800
Miami FL, 33131
Telephone: (305) 728-8831
*Attorneys for Plaintiff*

**EXHIBIT 1**

| TRADEMARK | REG. NO. | CLASS OF GOODS AND SERVICES |
|---|---|---|
| SHERLOCK HOLMES (Standard Character) | 4690745 | Class 041: Organisation of exhibitions for cultural, educational, and entertainment purposes |
| SHERLOCK HOLMES (Standard Character) | 4313984 | Class 028: Electronic gaming machines, namely, devices that accept a wager |
| SHERLOCK HOLMES (Standard Character) | 6821237 | Class 028: Playing cards, board games, puzzles, and action figures |
| SHERLOCK HOLMES (Standard Character) | 5906240 | Class 025: Clothing, namely, trousers, coats, vests, neckties, bow ties, capes, suspenders, cummerbunds, hats, skirts, dresses, trews, kilts, scarves, aprons, jackets, pyjamas, bathrobes, knickerbockers, and plus fours; footwear, namely, shoes and slippers; headwear, namely, flat caps, caps, and deerstalker hats |
|  | 5396601 | Class 016: Books and short stories in the field of detective fiction |
| DR WATSON (Standard Character) | 7757723 | Class 009: Apparatus and instruments for recording, transmitting, reproducing or |

| | | |
|---|---|---|
| | | processing sound, images or data; digital media, namely, downloadable audio and video recordings and pre-recorded DVDs and CDs featuring fiction, drama, and music; downloadable musical sound recordings and downloadable image files containing fiction, drama, and music; audio recordings, video recordings, and audio and video recordings featuring fiction, drama, and music; downloadable audio and video recordings featuring fiction, drama and music; television programs about fiction, drama, and music recorded on computer media; recorded radio programs about fiction, drama, and music recorded on computer media; video recordings featuring films about fiction and mystery; exposed cinematographic films; motion picture films about fiction and mystery; animated motion picture films about fiction and mystery; video recordings featuring animated cartoons in the field of fiction and drama; downloadable podcasts in the field of fiction and drama; musical recordings; prerecorded CDs and DVDs featuring fiction, drama, and music; phonograph records featuring fiction, drama, and music; photographic transparencies; exposed photographic films; downloadable computer software for sharing audiovisual and multimedia content; downloadable computer programs for streaming audiovisual and multimedia content via the Internet and global communications networks; recorded software applications for purchasing, |

| | | |
|---|---|---|
| | | accessing, and viewing TV shows, movies, videos, and multimedia content; downloadable software for mobile digital electronic devices for streaming audiovisual and multimedia content; downloadable software for sharing, accessing, and displaying electronic media, multimedia content, audio and video content, movies, music, games, photos, images, pictures, graphics, text, messages, information, data, news, and user-generated content; downloadable application software for mobile communication devices for streaming audiovisual and multimedia content; downloadable computer game software; downloadable computer games programs; downloadable video games software; computer screen saver software, downloadable; electronic databases in the fields of fiction, drama, and music recorded on computer media; recorded data files featuring fiction, drama, and music; blank digital or analogue recording and storage media; downloadable electronic publications in the nature of magazines, in the fields of fiction and drama; electronic publications in the nature of magazines in the fields of fiction and drama recorded on computer media; downloadable music files; downloadable sound recordings featuring fiction, drama, and music; downloadable graphic art reproductions; downloadable computer graphics; downloadable video files and image files featuring fiction, drama and music; downloadable electronic books in the |

| | | fields of fiction, drama, and mystery and electronic book readers; calculating machines; computers and computer peripheral devices; tablet computers; covers, cases, and battery chargers for computers and tablet computers; audio speakers and headsets for use with computers and tablet computers; data input devices, namely, keyboards and keypads for computers and tablet computers; media storage for use with computers and tablet computers, namely, blank USB flash drives, secure digital (SD) memory cards and micro secure digital (SD) memory cards; computer mouse mats and pads; electrical and electronic communications and telecommunications apparatus, namely, walkie-talkies and radios; telephones, mobile phones and smartphones; wireless transmitters and receivers; covers adapted for mobile phones; cases adapted for mobile phones; holders adapted for mobile phones; battery chargers; audio speakers; headsets; hands-free kits for phones; downloadable software for streaming audiovisual and multimedia content; downloadable sound files featuring fiction, drama, and music; data input devices, namely, electronic mice, electronic pens, electronic pencils, computer joystick peripherals, computer keyboards, and computer keypads; blank media storage, namely, blank USB flash drives, external computer hard drives, secure digital (SD) memory cards and micro secure digital (SD) memory cards; straps for mobile |
|---|---|---|

| | | |
|---|---|---|
| | | phones; headphones; earphones; audio speakers; smart speakers, namely, voice-activated speakers; cameras; video cameras; cases specially adapted for photographic apparatus and instruments; binoculars; magnifying glasses; eyewear; cases adapted for eyewear; spectacles and sunglasses and cases, chains, straps, cords and frames therefor; contact lenses and containers therefor; hologram apparatus; compasses and barometers; encoded identity cards; decorative magnets; electric signs; articles of protective clothing for wear by motorcyclists for protection against accident or injury; protective industrial footwear; headgear being protective helmets; protective masks for the prevention of accident or injury; replacement parts and fittings for all of the aforesaid goods |
| DR WATSON (Standard Character) | 7757723 | Class 016: Paper and cardboard; printed matter, namely, printed posters; printed holograms; bookbinding material for creating hardcover books, namely, book covers, crack-and-peel binding paper, reinforcement strips, peel-and-stick labels, stapler, and staples; printed photographs; stationery and office requisites, namely, paper trimmers, pens, paper notepads, and letter openers; adhesives for stationery or household purposes; drawing materials and materials for artists, namely, sketchbooks, pencils, and charcoal pencils; paintbrushes; printed instructional and teaching materials in the fields of fiction and drama; plastic sheets, films and bags for wrapping and packaging; printed |

| | | publications, namely, magazines and journals in the fields of fiction and drama; printed books in the fields of fiction and drama; printed story books; printed novels; book covers; book plates; printed periodical publications, namely, magazines, newsletters, and bulletins in the fields of fiction; printed catalogues in the fields of fiction and drama; printed brochures about fiction and dramatic narratives and characters; photograph albums; printed posters; printed pictures; prints in the nature of paintings and drawings; art prints; personalized writing journals; printed diaries; printed calendars; printed address books; stickers and transfers; decalcomanias; stencils; blank note cards; printed greeting cards; printed postcards; wrapping paper; gift bags; paper gift tags; carrier bags of paper or plastic; bags and boxes and containers of cardboard or paper for packaging, wrapping and storage; bags, films, sheets and bubble packs of plastic for packaging and wrapping; plastic food storage bags for household use; boxes of cardboard; hat boxes of cardboard; bookmarks; writing pads; printed notebooks; envelopes; paper labels; paperweights; book ends; writing instruments; pens; pen sets; pencils; cases specially adapted for stationery; pen and pencil cases; pen and pencil holders; pouches for writing instruments; writing ink; cardboard figures; printed children's activity books; printed gift books about themes and characters in dramatic and fictional literature; printed gift vouchers, not encoded; |
|---|---|---|

| | | printed patterns for making clothing; printed embroidery design patterns; paper flags and pennants; paper banners; advertising signs of paper or cardboard; paper table linen; paper tablecloths; paper and cardboard place mats; paper and cardboard coasters; paper napkins; paper towels; paper tissues; paper tissues for cosmetic use; cases for passports; sealing wax; seals |
|---|---|---|